IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**ROSEMARY WOLFE, Individually, as sole statutory**
**wrongful death beneficiary, and as Administratrix**
**of the Estate of Billy Wolfe**                                        **PLAINTIFF**

**V.**                                      **CASE NO. 2:08CV168**

**WALTER RAYFORD, M.D.**
**SOUTHEAST UROLOGY NETWORK, P.C.**
**LABMD, INC.**                                                 **DEFENDANTS**

## **ORDER**

This cause comes before the court on motions **[168, 172]** of Plaintiff to strike the testimony of Dr. Tate Thigpen and Dr. Richard S. Kuebler, retained by Dr. Walter Rayford and Southwest Urology Network. Defendant LabMD, Inc. moves **[223]** to strike the affidavit of Plaintiff witness Gary Smith.

The instant case concerns the failure of Dr. Rayford to diagnose decedent Billy Wolfe's bladder cancer in May 2006.

A.    *Dr. Tate Thigpen*

Plaintiff first moves to strike the testimony of Dr. Tate Thigpen, an oncology expert retained by Defendants Southeast Urology Network ("SUN") and Dr. Walter Rayford.

Expert testimony is governed by standard set forth in *Daubert v. Merrell Dow Pharms*. 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 469 (1993). In *Daubert*, the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. *Id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). *Daubert* requires that "when expert testimony is offered, the trial judge must

perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997). Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

*Daubert* set forth a non-exclusive checklist for trial courts to use in determining the reliability of expert testimony. These factors include: (1) whether the expert's technique or theory has been tested; (2) whether the technique or theory has been subjected to peer-review and publication; (3) the known or potential rate of error applicable to the technique or theory; (4) the existence of standards and controls applicable to the technique or theory; and (5) whether the technique or theory is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

The trial judge is responsible for ensuring that the proposed testimony is supported by "good grounds." *Id*. at 590. The party offering the witness as an expert bears the burden of demonstrating that the proffered expert opinions are based upon accepted methodology and reliable data. *Id*. at 591, n. 10; *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). "The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary

2

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Dr. Thigpen's opinion is that Wolfe's cancer had metastasized from his bladder to his skull and brain by May 2006. Dr. Thigpen reached this opinion using a doubling time theory to calculate Mr. Wolfe's tumor's growth.

Plaintiff presents several arguments as to why Dr. Thigpen should not be deemed reliable under *Daubert* and Fed. R. Evid. 702. However, Plaintiff's arguments, even taken as true, are more directly applicable to Dr. Thigpen's credibility. His methodology is only attacked through a case cited from the Connecticut Supreme Court. *Mayer v. Quest Diagnostics, Inc.*, 847 A.2d 978 (Conn. 2004). The doubling time calculation theory was held to be unreliable in this case. *Id*. at 985, 992. The expert in *Mayer* relied on an overly restrictive range of possible doubling times, such as thirty or sixty days. *Id*. The Connecticut court, however, noted that other jurisdictions have deemed the theory reliable. *Id*. at 991. In the instant case, Dr. Thigpen does not apply overly restrictive guidelines as a part of his methodology. Rather, he uses conservative estimates that have been tested both by him and other physicians as well as a control value from the date Mr. Wolfe detected lesions. Thus, his doubling time calculation theory is relevant and reliable, and Plaintiff will certainly be provided an opportunity to present her arguments that relate to his credibility through cross-examination.

B.  *Richard S. Kuebler, M.D., J.D.*

Plaintiff further moves to strike the testimony of Dr. Richard Kuebler, a radiologist. Dr. Kuebler's opinion is that Wolfe's bladder defects were more likely hematoma than a tumor. This opinion implicates that the treating radiologist's CT scan report was inaccurate.

Again, this court must apply the analytical framework set forth in *Daubert* to determine whether Dr. Kuebler's scientific testimony is reliable, as discussed above.

Plaintiff originally sets forth two problems under *Daubert* that Dr. Kuebler in an unreliable expert. First, that Dr. Kuebler's testimony has not been subjected to peer review and publication, and second, that his technique is not generally accepted in the scientific community.

However, Plaintiff continually argues that Dr. Kuebler's conclusion is one based in urology, rather than radiology, his specialized field. They also make much of the fact that Dr. Kuebler stated he was unable to read the CT scans. However. Dr. Kuebler made clear that any radiologist would not be able to distinguish between hematoma and a tumor on the images. This argument is applicable to Dr. Kuebler's credibility rather than his methodology, and is best left to cross-examination.

Dr. Kuebler's method to determine a hematoma existed instead of a tumor was to rely on Mr. Wolfe's cystoscopy results prior to May 19, 2006. The results showed no tumor, thus Dr. Kuebler concludes a hematoma is more likely to have been in existence instead. He further indicated that the results would be extremely relevant to a radiologist, but in light of Mr. Wolfe's clinical history, was not provided to the treating radiologist.

Plaintiff further argues that Dr. Kuebler has biased opinions in favor of Dr. Rayford, evidenced through his alleged disregard of Mr. Wolfe's medical records and substitution of his opinion for that of the un-biased treating radiologist. The Fifth Circuit warns that when "an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness and any resulting testimony would be unfairly prejudicial and misleading." *Viterbo v. Dow Chem. Co.*, 646 F.Supp. 1420, 1425 (5th Cir. 1986). However, Dr. Kuebler's

opinion is based on this same technique used by Mr. Wolfe's treating radiologist. He simply reaches a different conclusion. Further, Dr. Kuebler stated he understood his role to be an objective and unbiased witness. His testimony is not so prejudicial that it would be unfair or mislead the jury. Any evidence of bias relates to Dr. Kuebler's credibility and is proper questioning for cross-examination. Plaintiff's motion to strike Dr. Kuebler's testimony will be denied.

C.     *Gary Smith, J.D.*

Defendant LabMD moves to strike the affidavit of Plaintiff's witness, Gary Smith. Smith is an attorney who has been representing the interests of the Plaintiff. Smith's affidavit was an exhibit to Plaintiff's motion to alter/amend and relates to the issue of an award of attorney's fees. Smith outlines his basic trial strategy against LabMD in the affidavit to support Plaintiff's contention that she proceeded with her claim against Defendant LabMD in good faith and with legal support.

LabMD argues that affidavit is irrelevant and improper as well as untimely. The affidavit was submitted as an exhibit with Plaintiff's motion for reconsideration of this court's February 2, 2010 ruling that granted summary judgment in favor of LabMD and asked for additional briefing on the amount of costs and fees to award. In its May 26, 2010 order denying Plaintiff's motion for reconsideration, this court again requested briefing on the issue of whether attorney's fees were appropriate. The court did not consider Gary Smith's affidavit in its order as it did not reach the award issue.

Mr. Smith's statement of his trial strategy is highly relevant as to whether a claim proceeded in good faith and had adequate legal support in the view of Plaintiff's counsel. This

issue is one that this court addressed in its order granting summary judgment.

The submission is not untimely as it was attached to Plaintiff's motion to alter/amend a finding that an award could be proper. Further, this issue was continually being briefed until the end of May 2010. Thus, LabMD's motion will be denied at this time.

Plaintiff's motion **[168]** to strike Dr. Tate Thigpen is **DENIED**.

Plaintiff's motion **[172]** to strike Dr. Richard S. Kuebler is **DENIED**.

Defendant LabMD's motion **[223]** to strike witness Gary Smith's affidavit is **DENIED**.

This the 30th day of September, 2010.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**